OPINION FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| JOSEPH ODESSA WILCOX and | ) Case No. 09-35891 HRT |
| BELIA IRENE WILCOX, | ) |
| | ) Chapter 13 |
| Debtors. | ) |
| | ) |

## ORDER OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

This case comes before the Court on Debtor's *Second Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims* (docket #44) [the "Amended Plan"]. The Chapter 13 Trustee filed *Chapter 13 Trustee's Objection to Confirmation of Chapter 13 Plan* (docket #54) [the "Objection"]. On September 2, 2010, the matter came on for oral argument. William R. Evans, Methner and Associates, P.C., appeared for the Debtors; Brian J. Holst, Shively, Holst & Dowling, LLP, appeared for Credit Union of Denver; Aimee Grimsley appeared on behalf of Sally J. Zeman, the standing Chapter 13 Trustee.

The Trustee objects to confirmation of Debtor's plan. She objects on the basis that Debtor's treatment of the second mortgage held by the Credit Union of Denver [the "Credit Union"] constitutes a modification of "a claim secured only by a security interest in real property that is the debtor's principal residence . . ." and that such a modification is impermissible under 11 U.S.C. § 1322(b)(2). This is the only issue raised by the Trustee's objection. It presents a purely legal issue.

In this case, Debtors filed their *Verified Motion for Valuation of Collateral and Determination of Secured Status Pursuant to 11 U.S.C. §506* (docket #13) on December 17, 2009. The Credit Union filed its *Objection to Debtors' Motion to Determine Secured Status and Request for Hearing* (docket #20) on January 15, 2010. At the hearing on confirmation of Debtors' plan and valuation of the Credit Union's secured claim, the parties announced that they had come to an agreement and the Court directed the parties to file their settlement documents with the Court.

On June 11, 2010, the Court entered its *Order Granting Unopposed Motion to Approve Loan Modification and Forbearance Agreement Between Debtors and Credit Union of Denver* (docket #52). The agreement of the parties – approved by the Court – reduces the Credit Union's debt to $25,000.00 and reduces the Debtor's monthly payment to $125.00. Those modifications are conditioned on the Debtors' completion of their sixty month chapter 13 plan.

ORDER OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION
TO CONFIRMATION OF CHAPTER 13 PLAN
Case No. 09-35891 HRT

The Debtors' valuation motion under § 506 sought to value the Credit Union's junior lien on their residence at $0.00. The Credit Union's lien could then be stripped off; its debt treated as an unsecured claim in Debtors' plan; and ultimately discharged to the same extent as the other general unsecured claims. Hearings of that type are all or nothing affairs. Because of § 1322(b)(2)'s anti-modification provision with respect to secured claims against a debtor's principal residence, the ultimate outcome of these matters, after they go to hearing, is that the debtor either loses at the § 506 lien valuation hearing and must satisfy the junior lien according to the contract terms or, if successful, the debtor is allowed to strip off the lien entirely and include the debt with unsecured claims.

In this case, the Credit Union's compromise with the Debtors: 1) preserves its lien at a reduced amount; 2) does not require the Debtors to cure the pre-petition default in their plan; and 3) greatly reduces the payment the Debtors must pay to the Credit Union during the duration of their plan to maintain the obligation in a current status. The parties each protected themselves from the considerable risk of an adverse ruling from the Court. The Court reviewed the settlement of the parties when it was filed. The Court found it to be fair and equitable and approved it.

The Trustee takes the position that § 1322(b)(2) strictly prohibits a debtor from proposing a plan that modifies a claim secured only by a lien on the debtor's home – even when that modification is consensual. Aside from the statutory language, Trustee relies on the Supreme Court case of *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993). If correct, Trustee's interpretation of the law would deny the parties in interest the ability to voluntarily compromise a claim that is secured by a debtor's homestead.

If this issue has been raised in a prior reported case, the Trustee has not provided the Court with that authority. The Court's independent research has failed to uncover such a case. The Court suspects the lack of case law on the matter reflects the fact that it is an issue that rarely – or never – arises. It may well be that the lack of case authority means that trustees and other parties in interest rarely find any reason to object to plans that embody voluntary compromises of this sort.

Section 1322(b)(2) states that "the plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .." 11 U.S.C. § 1322(b)(2). Without question, if a debtor seeks to cram down a modification of a homestead mortgage, contrary to the provisions of § 1322(b)(2), the mortgagee or the trustee may object to confirmation of the debtor's plan under § 1325(a)(1) because the plan fails to comply with the provisions of chapter 13.

In this case, however, the Court is in agreement with the Debtors that their plan does not modify the Credit Union's rights in violation of § 1322(b)(2). It is the parties themselves who

ORDER OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION
TO CONFIRMATION OF CHAPTER 13 PLAN
Case No. 09-35891 HRT

have negotiated a modification of the Credit Union's rights. The Debtors and the Credit Union entered into their *Loan Modification and Forbearance Agreement* (docket #47, Exhibit 1) on May 27, 2010. That modification was approved by the Court as being fair and equitable (docket #52). Debtors filed their Amended Plan on June 10, 2010. The Amended Plan reflects the modified terms that the Debtors and the Credit Union had already agreed on.

Section 1322(b)(2)'s prohibition against cramdown of homestead mortgage modifications by a chapter 13 plan is not implicated here. The Debtors' Amended Plan does not modify the Credit Union's claim; it merely reflects a previously agreed modification. The fact that the parties' agreement is contingent upon ultimate completion of the Amended Plan and receipt of a bankruptcy discharge does not transform the agreement into a plan term that violates § 1322(b)(2). It is no more significant to include a contingency in the parties' agreement, referring to the completion of the Debtor's chapter 13 case, than a contingency in any agreement that depends on events outside the four corners of the document such as the prime interest rate or the passage of time. The Court simply cannot find a violation of § 1322(b)(2) where the plan itself does not operate to modify the terms of the Credit Union's note and deed of trust. The plan here does nothing more than recite the terms of the parties' separate modification agreement in the same way that another plan might recite the terms of an unmodified mortgage.

*Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), does not mandate a different result. In *Nobelman*, the Supreme Court held that a chapter 13 debtor cannot rely on § 506(a) to bifurcate a claim secured by a mortgage on the debtor's principal residence. Under § 506(a), a debtor may divide an undersecured debt in two parts. One is a secured debt in an amount equal to the value of the collateral. The remaining debt is treated as unsecured. Section 506(a) applies to all of the reorganization chapters. But § 1322(b)(2) creates an exception to the general rule. That exception prevents a chapter 13 debtor from forcing a creditor to accept such a bifurcation in a chapter 13 plan when the collateral consists only of the debtor's principal residence.

The Debtors here express no disagreement with *Nobelman's* holding. They do not rely on § 1322(b)(2) to modify the Credit Union's mortgage. They did seek the Court's determination under § 506(a) that the Credit Union's claim is wholly unsecured because a plan may treat a junior mortgage as an unsecured claim without violating § 1322(b)(2) when the value of the debtor's home is no more than the total of the senior mortgages. *See, e.g., In re Griffey*, 335 B.R. 166 (B.A.P. 10th Cir. 2005). But no valuation determination was made by the Court under § 506(a) because the parties chose instead to enter into their modification agreement. *Nobelman* is inapposite to the circumstances of this case.

Finally, § 1322(b)(2) operates to protect the rights of a homestead creditor like the Credit Union. By choosing to voluntarily modify its claim for purposes of the Debtors' Amended Plan, the Credit Union has voluntarily and knowingly waived any protection of its interests afforded by § 1322(b)(2). Certainly, a party who enjoys the protection of a statutory or even

ORDER OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION
TO CONFIRMATION OF CHAPTER 13 PLAN
Case No. 09-35891 HRT

constitutional provision may waive that protection. *See United States v. Wade*, 388 U.S. 218, 237 (1967) (Sixth Amendment right to assistance of counsel); *Miranda v. Arizona*, 384 U.S. 436, 469 (1966) (Fifth Amendment privilege against self-incrimination); *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938) (right to assistance of counsel). In some contexts, mere failure to assert a statutory right is enough to effect a waiver. *See United States v. Gomez*, 67 F.3d 1515, 1519-20 (10th Cir. 1995) (rights under Speedy Trial Act waived through failure to assert the right).

In the end, bankruptcy is about solutions and the Trustee's position sets up an artificial – and legally unsound – barrier to the efforts of the interested parties to reach a solution that works for both sides. Sound public policy encourages the voluntary settlement of disputes. *See, e.g., U.S. v. Purdue Pharma L.P.*, 600 F.3d 319, 332 (4th Cir. 2010) (false claims act *qui tam* action); *Robinson v. Shelby County Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) (desegregation class action); *Schering-Plough Corp. v. F.T.C.*, 402 F.3d 1056, 1072-73 (11th Cir. 2005) (patent litigation); *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321-22 (5th Cir. 2003) (Title VII employment discrimination claim); *In re Exxon Valdez*, 239 F.3d 985, 987 (9th Cir. 2001) (environmental tort claims); *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("delays resulting from good faith attempts to negotiation [sic] a settlement in the trademark context do not result in laches"). The Court commends the parties for their good work in negotiating a modification that serves the interests of both the Credit Union and the Debtors. Therefore, it is

**ORDERED** that the *Chapter 13 Trustee's Objection to Confirmation of Chapter 13 Plan* (docket #54) is DENIED.

Dated this 7th day of September, 2010.

**BY THE COURT:**

_____
Howard R. Tallman, Chief Judge
United States Bankruptcy Court